United States versus Coniglio. Good morning, Your Honors. My name is Gerald Crowe-Vayton, and I represent the appellant Joseph Coniglio. I'd like to reserve up to three minutes of time for questions. Your Honor, there is no dispute between the parties here as to the applicable standard. There is no question that the District Court in the trial below committed constitutional error in instructing the jury on the concealed conflict object of the honest services mail fraud scheme. But Skilling instructs that we must also determine whether that constitutional error was harmless. And the Supreme Court, as we have both covered in the briefs, in the Nader case, adopted the Chapman test for evaluating instructional error and found that the question is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. There has been some discussion in the briefs about whether the Hedgepeth standard has any applicability here, and I submit that's really beside the point, because whether there was, in fact, a flaw in the instructions that we submit had a substantial and injurious effect or influence in determining the jury's verdict, and that's the Hedgepeth standard. If it did, certainly then the government cannot carry its burden to prove beyond a reasonable doubt that the error here was harmless. So what you want is a new trial? Yes, Your Honor. In Nader, I think it's instructive, Your Honor, as to what is institutional error that is harmless beyond a reasonable doubt. In that case, the district court took away from the jury the question of whether the defendant's failure to report $5 million of income on his tax returns was material. The Supreme Court, in Chief Justice Rehnquist's opinion, found that the defendant did not contest the materiality of that issue at trial, whether or not $5 million of unreported income was material. The defendant in that case did not suggest he would have done so if allowed to contest the materiality of that issue, and the defendant in that case defended the case on a completely different theory. So the Supreme Court found in Nader that that error found beyond a reasonable doubt that it did not affect the verdict obtained. We have a completely different situation in this case, Your Honors. Here, by contrast, the concealed conflict object of the honest services mail fraud scheme was integrally intertwined in the warp and weave of the entire case. It was baked into this case from start to finish. The government argued that the jury should convict based on that object, the concealed conflict object, even if it found there was no meeting of the minds on quid pro quo bribery. The government repeatedly asked witnesses in this case if the defendant had disclosed his consulting contract with the hospital over the defendant's objection when there was no foundation for any duty on the defendant to do so. Counsel, are you arguing that as a matter of evidence the court should have excluded as irrelevant the concealment evidence? Your Honor, I think... If they had just had the bribery object only. If they had just had the bribery object only or if it had just been the Hobbs Act extortion case, there certainly would have been, we would submit some evidence that may have been relevant and admissible on concealment. But what the government did in this case was morph, was blur the distinction here between concealment evidence that goes to the defendant's state of mind, that raises an inference of consciousness of guilt from which the jury can infer the defendant's intent, criminal intent. Would they not have been able to argue that anyway? Well, they may have, Your Honor, but what they would not have been, we submit, able to introduce would have been evidence about the defendant's failure to disclose his consulting contract in situations where that had no bearing on consciousness of guilt at all. So what would have happened if counsel had asked the question, there was an objection, the court said objection sustained? It happens all the time. Well, and in fact we did object, Your Honor, to several instances when the government posed questions to various witnesses about whether or not Senator Coniglio had disclosed his consulting contract. But at the time those objections were made, it strikes me that they were properly denied because of the controlling law in effect at that time. I mean, the skilling had not yet been decided. That's correct, Your Honor. And that seems to be what you've turned around on the government here is say, well, how can you unpack the bribery side of the case from the concealment side of the case? Because it was all put together. That's exactly right, Your Honor. It was all put together and in fact... Why was it put together? Had cert not yet been granted in skilling at the time the trial was conducted? Or I was wondering why perhaps the trial judge didn't have specific verdicts or, you know, separate it out rather than have general verdicts. I don't think cert had been granted, as I recall, Your Honor, at that point. I believe the state of the law was you had the denial of cert in the filed a rather extensive dissent in which he sort of prefigured the court's decision in skilling and black, et cetera. So that at the time... So there was nothing wrong with the trial. It's just that the law has changed in your favor since the trial. That's the crux of your argument. Well, the law has changed in our favor. Yes, that's correct, Your Honor. And this is not a situation where the government can sustain its burden to prove beyond a reasonable doubt. The error was harmless beyond a reasonable doubt. And we have the instruction of this court on a panel in which, Judge Slover, you sat in the Riley case in which a very similar problem with a concealed conflict object arose and this... If we agree with you on a services fraud, as I recall, there were six counts of conviction and your Honor... So if we agree with you on the five but disagree with you on the extortion, what's the practical result? Well, I think as a practical matter, Your Honor, you would have to remand in that case for resentencing because I don't think there's any way and certainly no indication in the record of how Judge Kavanaugh reached his sentencing decision. And I think certainly he would be entitled to review again the propriety of the sentence that he imposed if there was in fact just a single conviction on the extortion count. Would the advisory guidelines have an effect on that? He certainly took into account the advisory guidelines, yes, Your Honor. Would they not change? I haven't done that calculation, Your Honor, but certainly it's something he would be entitled to take into account in resentencing. And he also imposed a $15,000 fine on all counts and I think certainly he would be entitled to revisit the propriety of that if Your Honors were to reverse just the honest services fraud counts, convictions. And indeed in Riley, this Court did exactly that, remanded back for the district judge to consider whether resentencing was appropriate in that case. How do the elements of honest services mail fraud bribery differ from the elements of extortion under color of official right? In this case they didn't, Your Honor. The government argued no distinction between the two. In convicting of extortion then, didn't the jury necessarily also find bribery? In convicting of extortion, the jury found that there had been, yes, there had been bribery or extortion under color of official right for those purposes. It does not mean, however, Your Honor, that the jury also found bribery with respect to the honest services fraud counts. Well, that's what I sort of was asking. How do the elements of honest services mail fraud bribery differ from the elements of extortion under color of official right? I don't think the elements for these purposes differ or that that's material. I think what the crux of our argument is the jury very well could have decided to convict on the honest services mail fraud counts without finding any quid pro quo bribery sufficient to sustain the conviction for Hobbs Act extortion. But the jury found guilty of extortion, right? Yes, Your Honor. And so doesn't that necessarily mean that the jury also found the bribery? No, Your Honor, it doesn't. Because they very well could have done one of two things, for example. Under the way that the government proved this case and the indictment was structured, the jury very well could have found the defendant guilty of honest services fraud for entertaining legislative requests, for example. That's language from the indictment. Actions that fell short of quid pro quo bribery. They also could have found, Your Honor, that the defendant was guilty of honest services fraud because of the concealment element of the case that, as we say, permeated the entire case. They could have found, for example, that it would have been piling on or redundant of the Hobbs Act extortion count to also convict of honest services fraud bribery but not redundant if they, in fact, found under the concealed conflict object. So there's not, there is certainly not an a fortiori relationship between their finding on the Hobbs Act extortion count and their finding on the honest services mail fraud counts. And, Your Honor, we also, this error, this error of the compounding of the concealment evidence was made even more impactful by the decision of the District Court to refuse to cabin or limit the reach of the defendant's duty to disclose in any way. There was no state law standard, no limiting principle, and it really invited the jury on those honest services fraud counts to convict for any nondisclosure to anyone for any reason. And we cited in our brief the example of this testimony of Robin Ratliff where there was no connection between the defendant's conduct and any official action. And at the end of the, of its direct examination, the prosecutor asked Ms. Ratliff, and by the way, did the defendant disclose his consulting contract? The defense objected. District Court overruled that objection. There again, that's not evidence of guilt. That's not consciousness of guilt evidence. That goes to whether or not he had a duty to disclose. And it is, it is that proof that we submit would not be admissible in a retrial simply of the extortion count alone. We have also argued, Your Honors, that the spillover prejudice from that evidence on the reversed count would have not been admissible at a trial limited to the Hobbs Act count. Yeah, I thought you would argue this spillover effect. We do, Your Honor, and we submit that's a basis for the reversal of the Hobbs Act extortion count. Again, the government deliberately blurred the distinction between evidence of consciousness of guilt and evidence of nondisclosure and a duty to disclose. And under the Murphy case in this circuit, it was the cumulative effect also of all of that evidence that almost amounts to character evidence, almost amounts to propensity evidence and argument that the defendant was, had to have been guilty of the Hobbs Act count because he engaged in so many incidents of quote unquote dishonest conduct. Thank you, Mr. Kropotkin. We're going to get you back. Thank you, Your Honor. And unlike the Supreme Court, you can argue your case, you don't have, you're not limited to rebuttal to what he says. You can continue your case in chief. May it please the Court. I'm Stephen G. Sanders, Assistant United States Attorney. I'm half of the United States, the appellee in this matter. Let me go back to point one. Mr. Kropotkin has argued that the concealment evidence was an entirely independent basis for conviction, which is not borne out by indictment and it's not borne out by the way we tried and proved this case. The concealment evidence was a building block, an essential building block of the bribery count. But it still came in. The point is that that evidence came in and don't you agree that that's not consistent with skilling now? The legal theory that you can convict of honest services fraud without bribery is certainly inconsistent with skilling. But skilling doesn't say anything. And what did you argue? How did you argue this case, or you, your office, argue this case before the jury? We tried it and proved it as a bribery case. But for one mention of the concealment theory in the rebuttal summation, which I'll get to, but if you look at the opening statement that Ms. Honig gave, and it's a fairly brief opening statement, I know there's four quadrants of transcript on each page, but you will see the government outlining a bribery case, plain and simple, and when we talk about concealment in that opening statement, just as in summation, we talk about the concealment as proving consciousness of guilt that shows the corrupt intent to commit bribery. Counsel, every trial judge's charge to the jury is that statements of counsel are not evidence. And in this instance, what concerns this court, at least concerns me as I'm inquiring here, is the cumulative effect of what would normally be improper character evidence. Your Honor, there is no improper character evidence in this case, because even if you're asking now about the spillover prejudice argument, in other words, what concealment evidence wouldn't have come in in a trial limited to extortion and a trial limited to bribery, we submit all the same concealment evidence would have come in because it was the same circumstantial case of bribery. We had to show corrupt intent, and consciousness of guilt is one classic way of showing intent and show that the defendant believed he was committing a crime. But as we say to the jury, why hide it? But the point is, is that it's disputed, at least by the defendant or appellant, that it was not indicative of consciousness of guilt, but rather it was bad character evidence. Well, but the only thing he points to are these questions, as he pointed out, that did you, when he was talking to people from the hospital, did you tell them that, did he tell you that he was being paid by the hospital? Well, what he's essentially arguing is that that's irrelevant, not unfairly prejudicial, that it doesn't prove anything. He's smuggling in an evidentiary objection. Now, if he's correct that that is probative of nothing under Rule 401, then he can't certainly bear his burden as a matter of plain error on the spillover prejudice claim of showing that it affected the verdict. The fact that the jury heard Ms. Ratliff say, no, he didn't say that, was meaningless in this trial. We had much more powerful consciousness of guilt evidence. We had, as we said, the lies to the Bergen record. We had the misleading statements to the Office of Legal Services soliciting an ethics opinion, which was limited to voting. So those, I think, are the only things he's said that just wouldn't have come in at a trial limited to extortion and bribery, but they're innocuous. But how do we know what affected the jury when it came out with its guilty verdict? I mean, you're saying, I mean, admittedly, you admit, you concede that some evidence shouldn't have come in under Skilling that came in, in this case. No, I don't concede that. You think that all of the evidence would have come in anyway? That's exactly right. This, I mean, and the way I can demonstrate that, and I'm not saying that I agree, Your Honor, that arguments of counsel aren't evidence, but what I'm saying, you can look at the way we tried the case to make, and I know we're sort of, we're dancing back and forth between the point one issue and the point two, the spillover prejudice issue, but you can look at the way we tried this case and know it was a bribery case because every time we talked about concealment. Well, let's look at the way you tried the case. Am I wrong in understanding that concealment evidence was put in? We absolutely put concealment evidence in. And was there a jury instruction regarding concealment? There was a consciousness of guilt instruction, absolutely. And at the time that jury was charged, was it not the law of the land that one could be convicted of honest services fraud without having a quid pro quo? That's the law of the land. Then how in the world can we conclude beyond a reasonable doubt that the jury did not convict this defendant based upon the easier to prove theory rather than the bribery theory? And let me construct that argument because we have the defendant boxed in six ways to Sunday because we, I don't have to show you just what a rational jury would have done. When was that, six days to Sunday? Six ways to Sunday. I thought I knew you boxed in six ways to Sunday. But tell me why I'm wrong. I'm ducking in here. I'm a little, frankly, Mr. Hannon, I'm surprised by the government's argument because it, I mean if the five counts go by the wayside and you're successful on the extortion count, you've still got essentially perhaps the same sentence. Well, perhaps. But let me take a stab at this and I want to add one element to what the argument was in my brief. Nader says we have to show that a rational jury surely would have found the bribery theory. And this is not a Nader case. Nothing about this instruction deprived the jury of its ability to make a finding. It just provided an extra basis for liability that's now not a crime. But we can look at what this jury found, right, that's one thing, the extortion findings. We know at a minimum on the mail fraud counts that they had to have found, right, all the elements of mail fraud including that he took official action to, right, in furtherance of a concealed financial interest, right, because that's the minimum required. So we have that leg. And we know also that the jury rejected the principal defenses in this case which is that the defendant was acting in good faith and on the advice of counsel. And we also had to establish willfulness. So we just proved those defenses beyond a reasonable doubt. And so what's left is, in other words, no jury would conclude that these were any conflict of interest. They were done because there was a quid pro quo bribery scheme here. And that's why you go to the extent to lie to the public, to your employer. Perhaps. We don't know. General verdict. I mean, if the judge had given, had the extraordinary foresight to have foreseen that Skilling was coming down the pike, then we would have seen specific verdicts and we would have been able to unpack the bribery from the concealment theory. But that's not what happened. I know. But, Your Honor, you're setting, I think, respectfully a standard that's much too high. Nader says the burden of proving an error of harmless mannerism of doubt shouldn't be set so high that it can never be satisfied. And that's in Chief Justice Rankin's opinion. It can be satisfied many times, but it might be awfully hard to satisfy it in a case where someone can be found guilty of crime X by proving this or proving this. And you're telling us that you know beyond a reasonable doubt that the jury found the higher threshold, harder to prove quid pro quo bribery, rather than the lesser, easier to prove concealment. And that seems, at bottom, to be counterintuitive. Well, we know the extortion verdict is, means worse, much higher than just the concealment theory under the mail fraud, if not equal to or almost at the bribery theory, right? Mr. Corbain admitted in his argument that they're essentially the same. And in his brief, I didn't highlight this, but he said, indeed, the prosecution drew no distinction either in its evidence or its arguments between the bribery object and the extortion count, which is what he admitted from the jury. If he's guilty of bribery under the, and is guilty of Hobbs Act extortion for committing bribery, he's guilty. A rational jury that made that finding wouldn't have failed to find that he committed on the same facts, with the same consciousness of guilt evidence, that he didn't engage in a quid pro quo bribery scheme. So we have the extortion count, which we have all the, you can look at what this jury found, and it takes you, I submit, all the way to a finding that a rational jury that found all that couldn't have also failed to find the quid pro quo here, especially when he was getting paid to do nothing. And that's something that defense sort of sloughed off in summation, but never really addressed, and that is he performed two official acts in the first month of his consulting contract where he's getting paid $5,000 a month, does absolutely nothing for the hospital after that, until the Bergen Record article hits the news in May 2005, but he gets a $500 raise in February of 06, right after these, or 05, pardon me, February of 05, after the two MAC account grants come down. So we had a powerful, powerful circumstantial case, and no rational says that, you know, that's an implied quid pro quo. Judge Sloveder, in your marvelous en banc opinion in Gennady, said, and you foreshadowed the holding in Evans, that accepting a bribe is prosecutable under the Hobbs Act as extortion, and he said that 10 years before the Supreme Court said it. So we have a finding here of Hobbs Act extortion, which is the equivalent of a public official accepting a bribe. So you're saying it would have been irrational to not find bribery based upon the extortion conviction? That's right, and under Mr. Cravaton's theory, if I understand it, he thinks that the jury would have gone straight to count nine on the verdict form, because remember, the extortion count is the last one. The mail fraud counts come first. He thinks that the jury would have gone to the extortion count, voted guilty, and then gone back and then convicted only of the concealment theory because they didn't want to pile on. And I mean, I respectfully submit that the opposite would be true. They would have found bribery first and then said we're not going to pile on by finding extortion. So we readily admit that there's an instructional error in this case, but that's just the beginning. Oh, you do. You do. I thought you didn't before when I asked you about that. No, we didn't. Okay. You do concede that there was an instruction error in this? Absolutely, and we did that back when we opposed Mr. Tinkler's bail motion. We readily admit there's an instructional error. The jury heard, was charged on a theory that's now no longer an offense. But that theory, as I said, is essentially a lesser included, if you will, of the bribery theory because the jury has to find all the same things it has to do to find the concealment theory, plus one more, which is the quid pro quo, which we know the jury found in convicting of extortion. Is it fair? Is it really the fair thing to do to say the judge charged erroneously, jury found you guilty, but you can have a new trial? I mean, just in terms of perception of fairness and justice. I mean, it happens. It happened in Nader. In Nader, the district court directed a verdict on an element. It didn't just take it away. It said... That was the Supreme Court. Maybe they don't have the same sense of fairness. And look, there was a pitched battle between Justice Scalia's view of the harmless error test that should apply, but Mr. Corbatin has argued for that standard, and under that standard we could never prove harmless error unless we had another count that was basically identical elements across the board, or we had a verdict sheet, which the defendant opposed, right? He's allowed to do that now blacked out. Well, we find harmless error a lot when the evidence is overwhelming. We excise out the taint, and the cases are legion finding evidence overwhelming, but here it appears that you've got two theories that were put to the jury, and one of them is no longer a valid theory, and how can we be sure that he was convicted under the valid theory rather than convicted under the invalid theory? Well, again, that just simply restates the error, Your Honor. The question in the... I can point to the Conrad Black case on remand from the Supreme Court. They went through the proper analysis there and said, there's no way this jury could have found... In that case, they didn't have a valid honest services theory. They had a separate money property fraud theory, and the question was, could the jury have found only honest services fraud but not property fraud? And as to one count, they said it's impossible that the jury did that, and they went through that analysis, and so they affirmed one of the convictions. The defendant got a remedy on two other counts because on that count... It wasn't impossible here. Given the extortion verdict, it was impossible, and given the way we tried and argued this case, we basically said he committed bribery, and he violated his duty of honest services of the concealment problem by concealing the bribery, and that was our argument all throughout this trial. I'd like to turn briefly back to the spillover prejudice argument, if I may. We've argued that the plain error standard... The which... Spillover prejudice, and we've argued that the plain error standard applies, and I just want to take that a step further, and here's why. In Murphy, the defendant objected at trial and had the opportunity or preserved his right to say that this evidence shouldn't come in and spill over and taint the other counts. In Cross, there was a severance motion made, right? In this case, the defendant never moved to sever, and he never argued at trial that this concealment evidence shouldn't come in to prove the extortion count or to prove the bribery theory, so he had the opportunity to make that claim, and he allowed the consciousness of guilt instruction to go to the jury without objection that allowed the jury to consider the concealment evidence as to all counts. So having sat by... He's forfeited that objection, so he's got to prove... Even if he can show that some concealment evidence wouldn't have been admissible in a trial limited to bribery and extortion, he has to show that whatever that evidence is, and I think he's only identified one piece, you know, this, you know, did they know you were... Did the senator tell you he was, you know, being employed by the hospital? He's got to show that that affected the outcome of the trial, and he certainly can't do that because in Cross, they treated it as a preserved claim, and there are entire amounts of other crime evidence. In other words, a whole other crime that had been Rule 29 on appeal, right? This was a civil rights conspiracy, you know, generating false acquittals. That came in at the trial, and Judge Ambrose's opinion said that was cumulative, but it didn't affect the verdict, and if that's true there on a preserved claim, then we can't certainly show prejudice here when it's unpreserved. I see my time is up. Okay. Thank you very much. Thank you. Roberta? Interesting. All three cases were interesting. Your Honor, two points. The government argues that they tried this case as a bribery case exclusively and that everything else fell under that mantle. That is not the case. Do we have to go through the record to decide? I mean, in order to answer that, do we have to read the transcript of the review? Certainly, Your Honor. The Nader decision, the Supreme Court decision, suggests that an appellate court does have to make a thorough review of the record to determine whether or not the government's met its burden to prove beyond a reasonable doubt that the error was harmless. But they tried this case from their very first witness as a concealment case, as a nondisclosure case. They went so far as to argue to the jury that my client, Senator Coniglio's lawful compliance with his only external disclosure requirement, namely his disclosure requirement on his could have gone further than the forms required, and he didn't and therefore took advantage of a loophole. From the very first witness they called, they started in on the failure to disclose, concealment theory. They called a newspaper reporter. The purpose of that was to demonstrate that Senator Coniglio and, more importantly, the So for them to suggest to this court that they tried this case exclusively as a bribery case and therefore anything else is harmless is belied by the record. All right. But what about the other issue? Why is the government wrong in picking up on Judge Slaughter's question when you were previously up here? Why is the government wrong that the conviction on the extortion count tells us that the other five convictions were for bribery rather than concealment? Because, Your Honor, there's not an equal sign between the two. In other words, the jury certainly could have found on the honest services fraud counts that it was concealment and not bribery that led them to convict there. Could it have rationally done that or could it have only have done so in some sort of a compromise verdict? Well, it certainly rationally could have, Your Honor, and that's But if the elements, I think Judge Slaughter pointed out to you, the elements are the same, right? There was no dispute as to whether or not there was a distinction in the elements. I think you could get metaphysical as to whether or not there are different elements. But for purposes of this case, there was no argument that there was a distinction. There was an argument I raised in summation that it was piling on, that there was a redundancy between the honest services fraud count and the bribery counts. And our position is, Your Honor, they certainly could have found, the jury certainly could have found that it was the failure to disclose all this evidence of concealment that gave rise to, as in Riley, the finding of honest services fraud for failure to disclose and not necessarily bribery. There is not, it does not follow that just because they found on the extortion count they also found the bribery object of the honest services mail fraud scheme. Thank you, Your Honor. Thank you. Okay. All right. Thank you. We will take the matter under advisement.